Harold P. Kelly, J.
This proceeding is brought pursuant to the General Municipal Law and the Charter of the City of Buffalo, to take by eminent domain, lands in fee within the City of Buffalo, for the urban renewal plan for the waterfront redevelopment project, as more fully set forth in the petition herein.
The lands to be taken in this proceeding are more particularly described as follows:
all that teact or parcel of land, situate in the City of Buffalo, County of Erie and State of New York, being parts of Outer Lots Nos. 3 and 5, in said City, and being further distinguished as parts of Subdivision Lots Nos. 19, 20, 21, 54, 55 *850 and 56, and all of Subdivision Lots Nos. 22, 23, 24, 25, 26, 27, 48, 49, 50, 51, 52 and 53 as shown on a map marked “A” annexed to and recorded with Articles of Agreement in a partition of the lands of Rachel Evans deceased, recorded in the Erie County Clerk’s Office in Liber 138 of Deeds at page 1, (a copy of said map also being filed in the Erie County Clerk’s Office under Cover No. 60) and being more particularly bounded and described as follows:
BBGirrrrmG at a point in the northwesterly line of Henry Street, distant 251.36 feet southwesterly from the intersection of said northwesterly line of Henry Street with the westerly line of the Terrace, as measured along said northwesterly line of Henry Street, said point of beginning also being the southeast corner of said Subdivision Lot No. 27; thence southwesterly along said northwesterly line of Henry Street, 202.87 feet, more or less, to the southeast corner of lands appropriated by the People of the State of New York, for Thruway purposes, as described in appropriation recorded in the Erie County Clerk’s Office in Liber 5750 of Deeds at page 103, and shown on Map No. 165, Parcel No. 165 of said appropriation; thence northwesterly along the northeasterly line of lands so appropriated by the People of the State of New York, 141.10 feet, more or less, to the southeasterly line of Charles Street; thence northeasterly along the southeasterly line of Charles Street, 220.49 feet, more or less to the northeasterly corner of Subdivision Lot No. 48 as shown on map aforesaid; thence southeasterly at right angles with the southeasterly line of Charles Street and along the northeasterly line of Subdivision Lots Nos. 48 and 27, 140 feet to the northwesterly line of Henry Street at the point or place of beginning.
The court, without a jury, heard testimony on May 20, 23, 24, 31, June 1, 7, 13 and 17, 1966, and viewed the premises with the respective counsel in this proceeding on June 17, 1966.
The premises are commonly known as 20-26 Henry Street, Buffalo, New York, located on the north side of Henry Street and extending through the south side of Charles Street. The frontage on Henry Street is 202.87 feet and on Charles Street the frontage is 220.49 feet, and the premises have a depth of approximately 140 feet.
There are six principal buildings besides a pipe storage shed and a small frame shed on the land.
In order to clarify which building the court speaking of, it will use the numbered designations as shown on respondent’s Exhibit A.
*851 Building No. 1, the machine shop, is a one-story brick and steel frame structure, approximately 49 feet by 140 feet (6860 sq. ft.) with a party wall on the east; building No. 2 containing the office, tool room and refrigerator equipment storage, is a brick, steel frame structure, approximately 50 feet by 69 feet (3467 sq. ft.); building No. 3, containing refrigeration equipment pattern storage and engineering sales, is a two-story brick, steel and wood frame structure with attic, being approximately 24 feet by 48 feet (6030 sq. ft. of space in its three floors); building No. 4 was used as the garage and oil house and is a brick and wood frame structure, approximately 32 feet by 20 feet with a 6 feet by 15 feet addition (766 sq. ft.); building No. 5 was a boiler room and is a brick and steel frame building approximately 14 feet by 16 feet plus a 3 feet by 9 feet addition (252 sq. ft.); building No. 6, containing the executive offices is a one-story brick and concrete wood frame structure approximately 19 feet by 20 feet (482 sq. ft.); pipe shed is a corrugated metal clad wood frame structure approximately 24 feet by 27 feet (468 sq. ft.), and storage shed, being a wood frame structure approximately 18 feet by 26 feet (641 sq. ft.).
The above-described premises were in a good condition, and being utilized by the owners for its best possible use as an industrial machine shop and refrigeration business.
The owners’ witnesses testified to the market value for the premises in varying amounts, as it existed at the time of the taking.
The respondents, although they urged the court to consider the appraisal made by the American Appraisal Company and Mr. John G-. Schwartz, concede that none of these appraisals are conclusive evidence of value and rely particularly on the testimony of Mr. E. Alan Nordstrum for the value of the land, buildings and what is referred to as irremovables. Mr. Nordstrum’s appraisal is $138,000.
In addition, the claimants offered testimony by Mr. O’Connell on the loss of value of machinery moved to their new premises on Scott Street in the amount of $91,030 and also seek a judgment for relocation payment of $25,000. These claims for damages will be more fully considered hereinafter.
The value placed on the premises by Mr. Lawrence Grant, the appraiser for the City of Buffalo is $50,000, plus $10,600 for irremovables, testified to by Harold J. Do err for the City of Buffalo.
The City of Buffalo offered no testimony as to loss in market value of the machinery moved from Henry Street to Scott Street *852 and takes the position that payment for relocation expenses is an administrative procedure and not a proper item of damage to be awarded by this court.
The petitioner’s objection to the receipt as evidence of the sale of land in 1955 by the respondent to the State of New York is sustained. The court agrees with the petitioner that this is not an “ arm’s length sale ” and that the price paid and accepted for this piece of subject property would by necessity contain a substantial allowance for consequential or severance damage. Further, the appraisal of the American Appraisal Company is of some probative value in respect to the buildings and fixtures (irremovables only) and was not of particular assistance to the court, as it was prepared as a guide for insurance purposes and not to determine the fair market value or just compensation as contemplated in this proceeding.
There is no dispute between the plaintiff and respondent that the respondent, Mollenberg-Betz, is entitled to be fully compensated for the value of the land, buildings, improvements, such as the fences and paving and those items delineated in the appraisals of the reports of Mr. Nordstrom and Mr. Grant as “ irremovables ”. The items delineated as “irremovables” are normally referred to in the decisions of the courts as “ fixtures ”.
The principal dispute centers around the question of compensation for the machinery and equipment which was removed by the respondent, Mollenberg-Betz, from Henry Street and placed in its newly acquired plant on Scott Street. Although there remains a problem related to the “moving cost” or “ removal expenses ”, the court will take up this problem later and we will first take up the problem of the machinery and equipment moved by the respondent from its old plant to its new plant.
There is a serious question of whether or not the claimant can be compensated for machinery, equipment or other personalty, when it elects to remove the same, even where such items if left on the condemned premises would definitely be classified as “fixtures”. (Marraro v. State of New York, 12 N Y 2d 285, 295.) No compensation for portion of fixtures removed by the owner (United States v. Certain Property, etc., 306 F. 2d 439 [C. A. 2d]).
The court in passing should make clear that the degree of annexation is not the sole test of whether or not the claimant is entitled to compensation for machinery or equipment used in the premises condemned.
*853 But leaving aside the fact that the respondent, has removed the .machinery and equipment and is now using it at Scott Street, the respondent can only be compensated for something that it has been damaged or as is sometimes said was “ taken ”, because of the condemnation. The value of the machinery “ in situ” is no higher than the cost of buying such machinery on the market place, plus the cost of installing said machinery or similar machinery there, or elsewhere (United States v. Certain Property, etc., supra, p. 449).
The respondent urges the court to consider the premise under what is referred to as the “integrated plant ” theory. An examination of the cases in which the courts appear to have awards on this theory, are those where the types of machinery involved would, when removed, have little or no value, or as in the ease where the State, in order to reduce its liability, and the owner being willing, is directed to remove said fixtures. In the present case, although there is no specific testimony on the cost or value of the various machines as used machinery in the market place, it is obvious that they have very substantial value not only to the respondent, but also if offered for sale to the trade.
The courts when they are faced with the problem of machinery and equipment in a condemnation matter, have usually designated those items which they desired to compensate the owner or tenant for as “ fixtures ”, when on the other hand they did not believe the owner had sustained any loss, they have a tendency to designate such items as “personal property ”. What causes the confusion is that in different cases the same or similar types of machinery or equipment have been designated a “fixture” in one suit and “personal property” in another lawsuit. But underlying this whole matter is the fact that the courts have awarded compensation for machinery where the owner has in fact suffered a real and substantial loss by the “ taking ” and not just a mere inconvenience.
One of the cases that has attempted to set up the New York law in reference to compensation for machinery involved in a “taking”, is United States v. Certain Property, etc. (supra, p. 446): “ New York entertains a rather broad view of what improvements are regarded as realty. In Jackson v. State, 213 N. Y. 34,106 N. E. 758, L. R. A, 1915D, 492 (1914), the Court of Appeals held that a taking of real estate included 1 machinery, shafting, elevators and conveyors. ’ Machinery is deemed real property ‘ where it is installed in such manner that its removal will result in material injury to it or the realty, or where the *854 building in which it is placed was specially designed to house it, or where there is other evidence that its installation was of a permanent nature. ’ Matter of City of New York (Whitlock Avenue), 278 N. Y. 276, 281, 282, 16 N. E. 2d 281, 282 (1938). The New York courts also regard as real estate those improvements which 1 were used for business purposes and would lose substantially all of # * * [their] value after severance,’ although their removal does not damage the rest of the realty. Matter of City of New York (Seward Park Slum Clearance Project), 10 A D 2d 498, 500, 200 N. Y. S. 2d 802, 804 (1st Dept. 1960). Such improvements would include ‘ custom built or specially designed fixtures [which] have little or no “ market value” when ripped out and removed.’ Marraro v. State, 15 AD 2d 707, 223 N.Y.S. 2d 556 (3d Dept. 1962).”
The same court defines just compensation on page 447 as follows: ‘ ‘ Since ‘ just compensation ’ means 1 the full and perfect equivalent in money of the property taken ’ and ‘ the owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken, ’ United States v. Miller, 317 U. S. 369, 373, 63 S. Ct. 276, 279, 87 L. Ed. 336 (1943), ‘ market value ’ is not necessarily the equivalent of just compensation but rather a useful and generally sufficient tool for arriving at this.”
Although the court in United States v. Certain Property, etc. (supra) awarded compensation for the value of the printing plant equipment, including the printing press installed in the building, it pointed out on page 448 that ‘ ‘ the machinery and related installations possessed a substantial resale value, or at least would have possessed it if the costs of removal and reinstallation entailed by the condemnation did not destroy it. Yet it is this very factor of large loss of value through removal that constitutes a principal reason why New York regards such machinery as ‘ real estate ’. Just as the value of land and buildings is normally measured by what a purchaser would pay but for the condemnation, so the appropriate measure of the value of machinery and fixtures is what a purchaser would pay for them for use in the premises being condemned. ”
•See, to the same effect, that large loss of value through removal constitutes the principal reason New York regards such machinery as real estate, Matter of City of New York (Seward Park Slum Clearance Project) (10 A D 2d 498, 500 [1960]) : “An award in condemnation may also be made for property, albeit readily removable without damage to the freehold, if such *855 property, were used for business purposes and would lose substantially all its value after severance.”
Nichols, Eminent Domain (vol. 2, § 5.83 [1]) Character of Fixtures states: “ New York has gone further and regards as real estate those improvements which are used for business purposes and would lose substantially all of their value after severance, although their removal does not damage the rest of the realty. [Citing United States v. Certain Property, 306 F. 2d 439; Matter of City of New York (Seward Park Slum Clearance Project), 10 A D 2d 498; Marraro v. State of New York, 12 N Y 2d 285, affg. 15 A D 2d 707.] Such improvements would include custom built or specially designed fixtures which have little or no market value when ripped out and removed. ’ ’
In the instant case, there has been no loss of value in the machinery removed to Scott Street by Mollenberg-Betz. The value of the machinery that was removed could only have a value that would be determined by taking the cost of such second-hand machinery on the market and adding the cost of installation at Henry Street. (The cost of installation would be special foundations, special wiring and piping and cost of moving the machinery to the place of installation.) When the respondent moved the machinery to Scott Street, its second hand-value, i.e., market value, would be the same and therefore no loss or damage was caused to the machinery moved, except that the cost of installation at Scott Street would appear to be compensable, except for the fact that New York has not recognized this as an item of damage. We will take this problem up later in this memorandum. The special wiring, piping, etc., installed at Henry Street, is what both appraisers call the value of the “ irremovables ” or “ built it ” and for which an allowance will be made.
The next problem presented by the evidence and the arguments and briefs of the parties, is whether or not this court has power to award compensation to this respondent for moving costs. In New York Jurisprudence (vol. 19, p. 422, Eminent Domain, § 186) it states: “Asa general rule, the cost of removing personal property not annexed to the freehold is not a proper element of damages in determining compensation in an eminent domain proceeding. ’ ’
Among the cases cited for authority is, Matter of People v. Johnson & Co. (219 App. Div. 285, affd. 245 N. Y. 627, cert. den. 275 U. S. 571) and Banner Milling Co. v. State of New York (240 N. Y. 533). It follows that “the cost of installation of *856 equipment removed to other premises is not ordinarily recoverable.”
“ While it may be as in this case that removal from one place to another may cause some loss, yet the elements making up that loss are so highly speculative that the courts have not considered it an appropriation or damage for which the State should pay as commanded by the Constitution.” (Banner Milling Co. v. State of New York, supra, p. 540.)
An examination of the cases in the State of New York leads to the conclusion that the cost of removal of personal property as distinguished from “fixtures” is noncompensable, unless there is a special statutory provision authorizing the payment for the same, the theory apparently being, that in an eminent domain proceeding, since personal property such as machinery that can be readily removed is not included in the “ taking”. Therefore, the cost of removal to a new location is a compensable item where a statute so provides and is not a violation of the constitutional mandate of just compensation since it is not considered part of the property appropriated or “ taken ”,
In the present case there are two statutory provisions that would on first reading appear to give this court power to award payment of moving or relocation expenses. The first is section 74-b of the General Municipal Law of the State of New York and the second is the Federal Housing Act of 1949, as amended (U. S. Code, tit. 42, § 1401 et seq.) and in particular the rules and regulations promulgated in subpart B — Relocation. Payments.
Without going into a detailed analysis of section 74-b of the General Municipal Law and subpart B of the rules and regulations governing relocation payments, under section 114 of the Housing Act of 1949 (U. S. Code, tit. 42, § 1465), it appears conclusively that these sections set up an administrative procedure that must be followed in order to obtain payment of moving expenses or removal costs. In the case of the New York statute, the amount of recovery is limited to $3,000, whereas under the Federal regulation, the amount of recovery is limited to $25,000. The placing of a maximum recovery in these statutes does not violate the constitutional provision of just compensation, since moving costs are not an element of damages that arise under a taking of land by a governmental authority. The rules and regulations of the Housing Act provide for certain proof to be submitted to the chief fiscal officer of urban renewal, and that payment up to $25,000 can be made upon his approval *857 and that of a Federal department, HUD. The defendant asserts that section 3.110 (Code of Fed. Reg., tit. 24) confers jurisdiction on this court to award compensation for removal costs. It is the opinion of this court that this section provides for the awarding of moving expenses only when such expense is compensable under the laws of the State of New York, and that this section in no way enlarges the jurisdiction of this court to make such an allowance where New York State law does not so provide and that section 74-b of the General Municipal Law likewise, does not enlarge the jurisdiction of this court without the claimant’s compliance with the administrative procedure outlined therein.
In conclusion it would appear that the claimant must pursue his remedies through the fiscal officer as provided in section 74-b of the General Municipal Law and/or under the Federal regulations, and after he has exhausted his administrative remedies, it is possible that this court can review the determination of the fiscal officer in a proceeding under article 78 of the CPLR.
The City of Buffalo should proceed to examine the respondent’s itemized claim for moving expenses and if additional proof is required, should advise and permit the respondent to complete the same and make a determination as expeditiously as possible.
The respondent, Mollenberg-Betz, is entitled to interest on the award herein in accordance with the following provision of section 388 of the City Charter (as added by L. 1929, ch. 527): “ In case the city shall have entered upon the land for which such compensation has been decreed, prior to the payment of the compensation decreed, the city shall pay interest upon the compensation decreed from the time of such entry.”
It should be finally noted that both the appraisers for the petitioner and the respondent recognized the fact that the announcement of the condemning of the property in this urban renewal area had a depressing effect on the market value of the premises located therein, and for that reason comparable sales in the redevelopment area are not as controlling in determining damages, i.e., market value of the subject premises.
The court, in considering all of the testimony and proof submitted, and after viewing the premises, is of the opinion and finds that just compensation to the respondent Mollenberg-Betz, owner, for the premises hereinbefore described is in the sum of $104,200, with interest from the date the respondent delixmrs possession to the city.
*858 The foregoing award includes an allowance for the value of the land, buildings and other improvements to the land and buildings, that cannot be removed and the value of the fixtures.
The award is subject to all unpaid franchise and real estate taxes, water bills, sewer rentals and any liens and incumbrances against the premises at the time of the taking of title by the City of Buffalo, as provided by law.